# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**PAUL DAMIEN VARGA, Individually,**
**and as Administrator of the Estate of**
**Loren Fidalgo,**

**Plaintiffs,**

**vs.**

**Civil Action No.: 2:24-cv-03410**

**ALLIED WORLD INSURANCE**
**COMPANY, ALLIED WORLD**
**NATIONAL ASSURANCE**
**COMPANY, and ALLIED WORLD**
**ASSURANCE COMPANY (U.S.), INC.,**

**Defendants.**

## DECLARATION OF BRIAN BRADY

I, Brian Brady, under penalty of perjury and pursuant to 28 U.S.C. § 1746, hereby states as follows:

1.      I am over twenty-one (21) years of age, a Senior Vice President at American Professional Agency, Inc. ("APA"), and competent to testify. This declaration is based on personal knowledge and documents maintained by APA in the ordinary course of its business.

2.      APA served as Managing General Agent for Allied World Insurance Company in connection with underwriting the Claims-Made Psychologists' Professional and Business Liability Policy No. 5010-5362 issued by Allied World Insurance Company to Harmony Health Services, Inc. for the period from October 1, 2018 to October 1, 2019 (the "Policy").

3.      Attached as Exhibit 1.1 is a true and correct, certified copy of the Policy, with premium information redacted.

I declare under penalty of perjury that the foregoing is true and correct.

This **19** day of August, 2024.

JANICE LYNN HOFFMAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02HO6429771
Qualified in Nassau County
Commission Expires February 22, 2026

Brian Brady

# EXHIBIT 1.1

# ALLIED WORLD

**ALLIED WORLD INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of New Hampshire
**1690 New Britain Avenue, Suite 101, Farmington, CT 06032  (1-800-421-6694)**
**CLAIMS-MADE PSYCHOLOGISTS' PROFESSIONAL AND BUSINESS LIABILITY POLICY**

10/04/18 - A        **THIS IS A CLAIMS MADE POLICY - PLEASE READ CAREFULLY**  *RENEWAL*

**NOTICE:** A LOWER LIMIT OF LIABILITY APPLIES TO JUDGEMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE THE SPECIAL PROVISION "SEXUAL MISCONDUCT" IN THE POLICY).

## DECLARATIONS

POLICY NO:     5010-5362
ITEM 1. (a) NAME AND ADDRESS OF INSURED:

ACCOUNT NO:     PA-HARM240-0     0216530C
ITEM 1. (b) ADDITIONAL NAMED INSUREDS:

DOROTHY MCGUFFIN, PH.D.
KAREN KEVRESHE, MSW

HARMONY MENTAL HEALTH
SERVICES, INC.
2400 CHESTNUT ST
OFFICE LEVEL
PHILADELPHIA, PA 19103

TYPE OF ORG:     CORPORATION

ITEM 2.     ADDITIONAL INSUREDS:

ITEM 3.     POLICY PERIOD:     FROM:     10/01/18     TO:     10/01/19
12:01A.M. STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN:

ITEM 4.     LIMITS OF LIABILITY:

(a) $     1,000,000     PER-CLAIM-INSURING AGREEMENT A.     (c) $     3,000,000  AGGREGATE

(b) $     1,000,000     PER-CLAIM-INSURING AGREEMENT B.(1) and B.(2)   (d) $     5,000  PER PROCEEDING

ITEM 5.     PREMIUM SCHEDULE:

| CLASSIFICATION | NUMBER | RATE | ANNUAL PREMIUM |
|---|---|---|---|
| PSYCHOLOGISTS | | | |
| OTHER PROFESSIONALS | | | |
| INDEPENDENT CONTRACTORS | | | |
| DEFENSE LIMIT | | | |
| CHARGE FOR CORPORATION | | | |

ITEM 6.     RETROACTIVE DATE:  10/01/92          TOTAL PREMIUM:

ITEM 7.     EXTENDED REPORTING PERIOD
ADDITIONAL PREMIUM (if exercised):$ _____ SCHEDULED RATING CREDIT INCLUDED

ITEM 8.     POLICY FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY

APA-PSY 00002 00 (06/14) APA 00127 37 (06/14)
APA 00100 00 (06/14)

APA-PSY 00001 00 (06/14)
**THIS IS NOT A BILL. PREMIUM HAS BEEN PAID.**

AUTHORIZED COMPANY REPRESENTATIVE
American Professional Agency * 95 Broadway, Amityville, NY 11701

ENDORSEMENT

SPECIFIC PERSONS OR ENTITIES EXCLUSION

This Endorsement, effective at 12:01 a.m. on 10/1/18, forms part of

        Policy No.    501-000005362
        Issued to    HARMONY MENTAL HEALTH
        Issued by    ALLIED WORLD INSURANCE COMPANY

In consideration of the premium charged, it is hereby agreed that no person or entity listed below is considered an **Insured** under this Policy.  Accordingly, this Policy shall not cover any **Defense Expenses** or **Damages** in connection with any **Claim** or **Proceeding** against, or alleging, arising out of, based upon or attributable to any actual or alleged act, error, omission of, any of the following persons or entities:

DAVID FRANKEL

All other terms, conditions and limitations of this Policy shall remain unchanged.

AUTHORIZED REPRESENTATIVE

APA 00100 00 (6/14)



---

### CLAIMS-MADE PSYCHOLOGISTS' PROFESSIONAL AND BUSINESS LIABILITY POLICY

---

**NOTICE: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. A LOWER LIMIT OF LIABILITY APPLIES TO JUDGMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE SECTION V. (C), "MAXIMUM LIMIT OF LIABILITY - SEXUAL MISCONDUCT" IN THE POLICY). PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR LEGAL OR INSURANCE ADVISOR.**

---

In consideration of the payment of the premium and in reliance upon the application submitted in connection with the underwriting of this Policy, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, the **Insurer** and the first **Named Insured**, on behalf of all **Insureds**, agree as follows:

## I.  INSURING AGREEMENTS

### A.  Psychologists' Professional Liability

The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Damages** arising from a **Claim** first made against the **Insured** during the **Policy Period** for a **Professional Incident**, and reported to the **Insurer** in accordance with the terms of this Policy. The **Professional Incident** must take place after the **Retroactive Date**.

A **Claim** will not be eligible for coverage under Insuring Agreement A. in the event such **Claim** is covered, in whole or in part, under Insuring Agreements B. (1), (2) or (3).

### B.  General Business Liability

(1)  The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Damages** arising from a **Claim** first made against the **Insured** during the **Policy Period** for **Bodily Injury** suffered by a **Business Invitee** or **Property Damage**, where such **Bodily Injury** or **Property Damage** was caused by an **Occurrence**, and reported to the **Insurer** in accordance with the terms of this Policy. The **Occurrence** must take place on the **Business Premises** and after the **Retroactive Date**.

(2)  The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Damages** arising from a **Claim** first made against the **Insured** during the **Policy Period** for **Personal or Advertising Injury** caused by an **Occurrence** that is related to the rendering of **Professional Services**, and reported to the **Insurer** in accordance with the terms of this Policy. The **Occurrence** must take place after the **Retroactive Date**.

(3)  The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Damages** arising from a **Claim** first made against

the **Insured** during the **Policy Period** for **Fire Damage** caused by an **Occurrence**, and reported to the **Insurer** in accordance with the terms of this Policy. The **Occurrence** must take place on the **Business Premises** and after the **Retroactive Date**.

A **Claim** will not be eligible for coverage under Insuring Agreements B. (1), (2) or (3) in the event such **Claim** is covered, in whole or in part, under Insuring Agreement A.

C.    <u>**Information Privacy Liability**</u>

(1)    The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Defense Expenses** and **Damages** arising from a **Claim** first made by a **Regulator** against the **Insured** during the **Policy Period** for any **Privacy Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this Policy. The **Privacy Wrongful Act** must take place after the **Retroactive Date**.

(2)    The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the costs incurred by the **Insured** in notifying the **Insured's** patients or clients of a **Privacy Wrongful Act** as mandated by any U.S. federal or state privacy protection statutes or regulations, but only if such **Privacy Wrongful Act** is reported to the **Insurer** in accordance with the terms of this Policy. The **Privacy Wrongful Act** must take place after the **Retroactive Date**.

Coverage under this Insuring Agreement C. (2) applies regardless of whether or not a **Claim** for a **Privacy Wrongful Act** is made against an **Insured**.

## II.    ADDITIONAL COVERAGES

A.    <u>**Defense Expenses for Claims**</u>

The **Insurer** will pay on behalf of the **Insured** the **Defense Expenses** incurred by the **Insured** arising from any **Claim** covered under Insuring Agreements A. or B.

B.    <u>**Insured's Costs for Claims**</u>

The **Insurer** will pay on behalf of the **Insured** the reasonable costs, other than loss of earnings, incurred by the **Insured**, at the **Insurer's** request, in connection with defending any **Claim** covered under this Policy.

The **Insurer** will also pay the **Insured** up to $1,000 per day for loss of earnings, if the **Insured** is unable to render **Professional Services** since the **Insured** is assisting, at the **Insurer's** request, in the defense of a **Claim** covered under this Policy.

C.    **Legal Bonds for Claims**

The **Insurer** will pay the premiums for appeal bonds, or bonds to release property used to secure a legal obligation, if required, with respect to a **Claim** covered under this Policy. However, the **Insurer** will only pay such premiums if the amount of the bond is within the applicable Limits of Liability of this Policy. The **Insurer** shall have no obligation to appeal any decision or to obtain these bonds.

D.    **Defense Expenses for Proceedings**

The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Defense Expenses** incurred by the **Insured** arising from any **Proceeding** first brought during the **Policy Period** and reported to the **Insurer** in accordance with the terms of this Policy.

E.    **Medical Payments**

The **Insurer** will pay on behalf of the **Insured**, subject to the applicable Limit of Liability, the **Medical Payments** arising from any **Bodily Injury** suffered by a **Business Invitee**, where such **Bodily Injury** was caused by an **Occurrence** and is reported to the **Insurer** in accordance with the terms of this Policy. The **Occurrence** must take place on the **Business Premises** and during the **Policy Period**. The injured **Business Invitee** must submit to examination, as often as required by the **Insurer**, by physicians of the **Insurer's** choice and at the **Insurer's** expense.

F.    **Emergency Aid Expenses**

The **Insurer** will reimburse the **Insured**, subject to the applicable Limit of Liability, for costs and expenses for medical supplies, and for one (1) hour of the **Insured's** lost earnings at an hourly rate of $100.00 per hour or the **Insured's** average hourly rate charged for **Professional Services**, whichever is less. The **Insured** must voluntarily incur such costs and expenses by rendering emergency treatment or services at the scene of an accident, medical crisis or disaster, provided that such treatment or services takes place during the **Policy Period** and that the **Insured** as soon as practicable reports any costs or expenses to the **Insurer**.

G.    **Assault or Battery**

The **Insurer** will reimburse the **Insured** for medical expenses that the **Insured** incurs as a result of **Bodily Injury** caused by an **Assault or Battery**, or **Property Damage** to the **Insured's** personal property if caused by an **Assault or Battery**. The **Assault or Battery** must be committed by a patient or client of the **Insured**, or by the patient's or client's immediate family member, during the **Insured's** rendering of **Professional Services.**

Provided always that:

(1)    such **Assault or Battery** takes place during the **Policy Period**;

(2)    the treatment or other services eligible for reimbursement as medical expenses are rendered within one (1) year of the **Assault or Battery**, and the medical expenses are reported to the **Insurer** within ninety (90) days from the date such treatment or service was rendered; and

(3)    the **Insured** submits to examination, as often as reasonably required by the **Insurer**, by physicians of the **Insurer's** choice and at the **Insurer's** expense.

Coverage under this **Assault or Battery** Additional Coverage is excess over any other valid and collectible insurance, including workers' compensation or health insurance.

## III.    DEFINITIONS

A.    **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about **Professional Services** for the purpose of attracting patients or clients. For the purposes of this definition:

(1)    notices that are published include material placed on the Internet or on similar electronic means of communication; and

(2)    regarding websites, only that part of a website that is about the **Insured's** goods, products or services for the purposes of attracting patients or clients is considered an advertisement.

B.    **"Assault or Battery"** means the willful infliction of physical harm on the **Insured**, by a patient or their immediate family member, or any attempt thereof.

C.    **"Bodily Injury"** means bodily harm, sickness or disease, including any resulting death, and mental anguish or emotional distress, resulting therefrom.

D.    **"Business Invitee"** means any natural person, including a patient or client, solely in their capacity as one who is invited by the **Insured** to enter into and remain on the **Business Premises** for a purpose directly or indirectly connected with the rendering of **Professional Services**. A **Business Invitee** shall not include any person who enters the **Business Premises** without the **Insured's** knowledge or permission, or any person who is an **Insured**.

E.    **"Business Premises"** means any location owned, leased or rented by the **Insured** where **Professional Services** are rendered, and the ways and means immediately adjacent thereto, and may include the **Insured's** residence if **Professional Services** are regularly rendered at such residence.

F.    **"Claim"** means any:

(1)    written demand for monetary relief made against an **Insured**;

(2)    judicial proceeding which is commenced against an **Insured** by service of a civil complaint, notice of charges or similar pleading;

(3)   arbitration proceeding commenced against an **Insured** by service of a demand for arbitration; or

(4)   administrative proceeding or formal investigation commenced by a **Regulator,** but solely as respects Insuring Agreement C.

Multiple demands, proceedings or investigations arising out of the same **Professional Incident, Privacy Wrongful Act** or **Occurrence** shall be deemed a single **Claim**, which shall be treated as a **Claim** first made during the **Policy Period** in which the first of such multiple demands, proceedings or investigations is made against any **Insured** or in which notice of circumstances relating thereto is first given in accordance with Section VI., paragraph D., whichever occurs first.

G.     **"Damages"** means:

(1)   settlements or judgments;

(2)   pre-judgment or post-judgment interest; and

(3)   costs or fees awarded in favor of the claimant.

**Damages** do not include:

(a)   amounts for which the **Insureds** are not legally liable;

(b)   amounts which are without legal recourse to the **Insureds**;

(c)   taxes;

(d)   the return, restitution, refund or disgorgement of fees, profits or amounts charged, held or retained by the **Insured** in connection with the rendering of **Professional Services**;

(e)   fines or penalties, except:

(i) as provided for in Section V. D.; or

(ii) **HIPAA** fines and penalties, but solely under Insuring Agreement C. (1); or

(f)   amounts deemed uninsurable under applicable law.

H.     **"Defense Expenses"** means reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim** or a **Proceeding**.

**Defense Expenses** do not include:

(a)   amounts incurred prior to the date a **Claim** is first made, or a **Proceeding** is first brought, and reported to the **Insurer**; or

    (b)    compensation or benefits of any natural person **Insured** or any overhead expenses of any **Insured** organization.

I.    **"Fire Damage"** means **Property Damage** to the tangible property of a third party other than the **Insured**, caused by a fire to premises the **Insured** rents or leases from others or to premises temporarily occupied by the **Insured** with the permission of the owner, solely for the purpose of rendering **Professional Services**. Such premises shall not include the **Insured's** residence. **Fire Damage** includes any water damage caused by such fire. The fire must not be caused intentionally by the **Insured**.

With respect to **Fire Damage**, **Property Damage** shall not include damage to any personal property owned by the **Insured**, or any other personal property of any person that is within the **Insured's** care, custody or control.

J.    **"HIPAA"** means the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191), as amended, and any regulations promulgated thereunder.

K.    **"Insured(s)"** means:

    (1)    the individual, partnership, or corporation designated as the **Named Insured** in Item 1 (a) of the Declarations and the individual(s) designated as Additional **Named Insureds** in Item 1 (b) of the Declarations;

    (2)    any present or former employee, partner, executive officer, director or stockholder of the **Named Insured** designated in Item 1 (a) of the Declarations, but only while acting in his or her capacity as such;

    (3)    any individual, partnership or corporation designated in Item 2 of the Declarations, but only as to matters for which a **Named Insured** may be liable;

    (4)    the lawful spouse or domestic partner (whether such status is derived by reason of statutory law, common law or otherwise) of a **Named Insured** arising solely out of his or her status as the spouse or domestic partner of a **Named Insured**; provided, however, that coverage shall not be afforded for any actual or alleged **Professional Incident**, **Privacy Wrongful Act** or **Occurrence** by or on the part of the spouse or domestic partner, unless such person is a **Named Insured**; and

    (5)    the estates, heirs or legal representatives of any incompetent, insolvent, bankrupt or deceased person who was an **Insured** at the time the **Professional Incident**, **Privacy Wrongful Act** or **Occurrence** upon which such **Claim** is based were committed; provided, however, that coverage shall not be afforded for any actual or alleged **Professional Incident**, **Privacy Wrongful Act** or **Occurrence** by or on the part of any such estates, heirs or legal representatives.

L.    **"Insurer"** means the Insurer specified in the Declarations.

M.    **"Medical Payments"** means reasonable payments for:

(1)    first aid administered at the time of an accident;

(2)    necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3)    necessary ambulance, hospital, professional medical and nursing and funeral services,

provided that such treatment and services are rendered within one year of the **Occurrence** that caused the **Bodily Injury**.

N.    **"Mental Health Counselor"** means an individual who is licensed or certified, as applicable by the appropriate State Licensing Board or other governmental regulatory body, to engage in **Professional Services** as a mental health counselor, social worker, pastoral counselor, hypnotist, psychoanalyst, psychotherapist, life coach, or marriage and family counselor, as defined by state laws and regulations, or any individual practicing other mental health disciplines, as approved by the **Insurer.**

O.    **"Named Insured"** means the natural person(s) or organization(s) named in Item 1 (a) or 1 (b) of the Declarations.

P.    **"Occurrence"** means:

(1)    as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of the same **Occurrence**; or

(2)    as respects **Personal Injury or  Advertising Injury**, an offense arising out of the **Insured's** business that causes **Personal Injury or Advertising Injury**. All **Damages** that arise from the same, related or repeated injurious material or act will be deemed to arise out of the same **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**"Occurrence"** does not include the rendering of **Professional Services** or a **Privacy Wrongful Act**.

Q.    **"Personal or Advertising Injury"** means injury, including consequential **Bodily Injury**, suffered by a person other than a patient or client of the **Insured**, arising out of one or more allegations of the following offenses:

(1)    false arrest, detention or imprisonment;

(2)    malicious prosecution;

(3)    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies,

committed by or on behalf of its owner, landlord or lessor;

    (4)    oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    (5)    oral or written publication, in any manner, of material that violates a person's right of privacy;

    (6)    the use of another's advertising idea in any **Advertisement**; or

    (7)    infringing upon another's copyright, trade dress or slogan in any **Advertisement**.

R.    **"Personally Identifiable Information"** means:

    (1)    information from which an individual may be uniquely and reliably identified, including, but not limited to an individual's name, address, telephone number, email address, in combination with their social security number, account relationships, account numbers, passwords, PIN numbers, credit card numbers or biometric information; or

    (2)    personal information as defined in any U.S. federal or state privacy protection law governing the control and use of an individual's personal and confidential information, including any regulations promulgated thereunder, or any similar or related laws or regulations of any foreign jurisdiction, including but not limited to:

        (a)    "nonpublic personal information" as defined by Title V of the Gramm-Leach-Bliley Act of 1999, as amended, and any regulations promulgated thereto;

        (b)    "protected health information" as defined by **HIPAA**.

S.    **"Policy Period"** means the period commencing on the inception date shown in Item 3 of the Declarations. This period ends on the earlier of either the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this Policy.

T.    **"Pollutant"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

U.    **"Privacy Wrongful Act"** means any actual or alleged act, error, or omission committed by any **Insured**, solely in connection with the rendering of **Professional Services**, which results in:

    (1)    the misappropriation or disclosure of **Personally Identifiable Information**;

    (2)    a breach or violation of U.S. federal or state law or regulations associated with the control and use of **Personally Identifiable Information**;

**Privacy Wrongful Act** shall not include any breach or violation of any U.S. federal or state law if such breach or violation is not the result of the actual or potential unauthorized disclosure of, or access to **Personally Identifiable Information**.

All such acts, errors or omissions, as referenced in this definition, that are actually or allegedly caused, committed, or attempted by or claimed against one or more **Insureds** arising out of the same or relating to the same or series of related facts, circumstances, situations, transactions or events shall be deemed to be the same **Privacy Wrongful Act**. **Privacy Wrongful Act** does not include an **Occurrence** or **Professional Incident**.

V.     **"Proceeding"** means any:

(1)    hearing or disciplinary action before any regulatory body, licensing board, agency or other organization responsible for monitoring, licensing or regulating the **Insured's** conduct as respects the rendering of **Professional Services**, but only if such hearing or action is  attributable to a **Professional Incident**;

(2)    civil proceeding in which the **Insured** is not a defendant but has been ordered to offer deposition testimony regarding **Professional Services**; or

(3)    civil proceeding in which the **Insured** is not a defendant but has received a subpoena for document or record production.

W.     **"Professional Incident"** means any actual or alleged negligent act, error, or omission, solely in the performance of, or actual or alleged failure to perform, **Professional Services** as a **Psychologist.**

All such acts, errors or omissions, as referenced in this definition, that are actually or allegedly caused, committed, or attempted by or claimed against one or more **Insureds** arising out of the same or relating to the same or series of related facts, circumstances, situations, transactions or events shall be deemed to be the same **Professional Incident**. A **Professional Incident** does not include an **Occurrence** or a **Privacy Wrongful Act**.

X.     **"Professional Services"** means all mental health related services rendered by the **Insured** or by any person or organization for whom the **Named Insured** is legally responsible, including but not limited to the following:

(1)    services as a member of a formal accreditation, credentialing or standards review or similar professional board or committee;

(2)    the publication of articles or books, and broadcasting or telecasting activities directly relating to **Professional Services**;

(3)    formal clinical teaching activities/clinical trials.

Y.     **"Property Damage"** means physical injury to or destruction of tangible property, including loss of use of it, or loss of use of tangible property which has

not been physically injured or destroyed.

Z.  **"Psychologist"** means an individual with a master's degree or doctorate in psychology by an accredited college or university, and who is licensed or certified, as applicable, by the appropriate State Licensing Board or other governmental regulatory body, to engage in the practice of psychology, as defined by state laws and regulations.  Where used throughout the Policy, the term **Psychologist** shall be deemed to include a **Mental Health Counselor**.

AA.  **"Regulator"** means any federal, state or local governmental authority, including but not limited to any regulatory body, licensing board, agency or other organization responsible for monitoring, overseeing or licensing the rendering of **Professional Services**.

BB.  **"Retroactive Date"** means the date set forth in Item 6 of the Declarations.

CC.  **"Sexual Misconduct"** means any type of actual, alleged, attempted, or proposed physical touching or caressing, or suggestion thereof by the **Insured** or any person for whom the **Insured** may be legally responsible, with or to any of the **Insured's** past or present patients or clients, or with or to any relative or any person who regularly resides with any such patient or client, or with or to any person with whom such patient or client or relative has an affectionate personal relationship, which could be considered sexual in nature and/or inappropriate to any **Professional Services** being rendered.

## IV.   EXCLUSIONS

A.  This Policy shall not cover any **Defense Expenses** or **Damages** in connection with any **Claim** or **Proceeding**:

(1)  alleging, arising out of, based upon or attributable to an **Insured's** dishonest, fraudulent, criminal, or malicious act, error, or omission, or that of any person for whose acts the **Insured** is legally responsible;

in determining the applicability of Exclusion A., the facts pertaining to, the knowledge possessed by, or any **Professional Incident**, **Occurrence** or **Privacy Wrongful Act** committed by, any **Insured** shall not be imputed to any other **Insured**;

(2)  alleging, arising out of, based upon or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination, or any other employment-related or employment practices claim including but not limited to any wage-hour claim, or any claim of discrimination or harassment by any party who is not an employee of the **Insured**;

(3)  for any act, error or omission of a managerial or administrative nature; provided, however, that `this Exclusion shall not apply to any **Claim** or **Proceeding** arising from the rendering of **Professional Services** as set forth in Definition X.;

(4)  alleging, arising out of, based upon or attributable to the **Insured's**

ownership or operation of a hospital or other similar facility, or any other facility which provides bed and board or in-patient care, or a laboratory;

(5) brought by, or on behalf of, any **Insured**, or for injury or damage sustained by any spouse or person who regularly resides in the home of any **Insured**;

(6) for **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, operation or entrustment to others of any automobile, watercraft, aircraft or motor vehicle, or the loading or unloading thereof;

(7) for **Bodily Injury** or damage to the **Insured's** employee or any independent contractor or employee of any independent contractor working for such **Insured**, arising out of the course of his or her work for such **Insured**, or to the spouse or relative of such employee or independent contractor as a consequence of injury or damage to the employee or independent contractor;

(8) alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

(9) arising out of any intentional act of plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets;

(10) alleging, arising out of, based upon or attributable to **Property Damage** to property the **Insured** owns, rents, occupies, borrows or uses, or is in the **Insured's** care, or to premises the **Insured** has sold, given away, or abandoned; provided, however, that this Exclusion shall not apply to a **Claim** under Insuring Agreement B. (3) or Additional Coverage G.;

(11) alleging, arising out of, based upon or attributable to any business relationship between the **Insured** and any past or present patient or client;

(12) alleging, arising out of, based upon or attributable to any **Professional Incident** committed with the knowledge that it was a **Professional Incident**, or which, before the effective date of this Policy, the **Insured** was aware of and could reasonably have foreseen might result in a **Claim** or a **Proceeding**;

(13) alleging, arising out of, based upon or attributable to any **Professional Service** that is not allowable since the **Insured's** professional license or registration to practice is suspended, revoked, terminated, surrendered or is not in effect;

(14) alleging, arising out of, based upon or attributable to any **Professional Incident** committed while the **Insured** was under the influence of a drug or intoxicant;

(15) caused directly or indirectly by war or any act of war, invasion, act of

foreign enemy, hostilities (whether or not war is declared), strike, riot or civil commotion, civil war, rebellion, revolution, insurrection, military or usurped power or terrorism;

(16) alleging, arising out of, based upon or attributable to, or in any way related to fungi, including mold or mildew, any mycotoxins, toxins, allergens, spores, scents, vapors, gases or by-products released by fungi, regardless of whether such fungi is:

    (a) airborne;

    (b) contained in a product; or

    (c) contained in or a part of any building, structure, building material or any component of any part of any of the foregoing;

(17) alleging, arising out of, based upon or attributable to the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any liability or obligation to test, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, whether or not any of the foregoing are to be performed by or on behalf of the **Insured**;

(18) alleging, arising out of, based upon or attributable to the design, manufacture, use, distribution, promotion, or sale of any medication, device or equipment, or protocols;

(19) alleging, arising out of, based upon or attributable to medical treatment, including the providing of drugs unless such treatment is provided under the written direction of a physician; provided, however, this Exclusion shall not apply to the use of biofeedback equipment customarily used in the **Insured's** practice as a **Psychologist**;

(20) alleging, arising out of, based upon or attributable to **Professional Services** as a mediator, including but not limited to the provision of Divorce Mediation Services, whether or not for a fee; provided, however, this Exclusion shall not apply to the provision of Divorce Mediation Services, if:

    (a) prior to providing such services, a written statement to all parties is provided explaining that the **Insured** is a neutral and unbiased intermediary whom shall not act as an advocate for any one party;

    (b) The **Insured** in fact, act exclusively as a neutral and unbiased intermediary between the parties; and

    (c) the **Insured**, in connection with such Divorce Mediation Services, advises all parties, in writing at the time any settlement or other such agreement is presented to the parties, to have such agreement reviewed independently by counsel of their choice prior to their execution of the agreement:

    (21)   alleging, arising out of, based upon or attributable to:

        (a)   any actual or alleged Medicare/Medicaid fraud or abuse or any other actual or alleged fraud against the government; or

        (b)   any improper or excessive billing for the cost of the **Insured's** goods or services.

B.    This Policy shall not cover any **Defense Expenses** or **Damages** in connection with any **Claim** or **Proceeding** or any notification costs from a **Privacy Wrongful Act** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any of the following:

    (1)   unsolicited electronic dissemination of faxes, e-mails, text messages or similar communications to an actual or prospective patient or **Business Invitee** of the **Insured** or to any other third party, including but not limited to any violation of the Telephone Consumer Protection Act, any federal or state anti-spam statute, or any other federal or state statute, law or regulation relating to a person's or entity's right of seclusion;

    (2)   failure, interruption or reduction in supply of utility service or infrastructure, including, without limitation, electrical, gas, water, telephone, Internet, cable, satellite, or telecommunications;

    (3)   any wireless network that is not protected by either Wi-Fi Protected Access ("WPA") or any other security protocol that provides equal or greater protection than WPA;

    (4)   the use of a laptop computer, portable computer or other portable electronic device which does not employ whole disc encryption;

    (5)   back -up tapes, optical media, or any other form of portable back-up media which are not encrypted; or

    (6)   expiration or withdrawal of technical support by a software vendor.

## V.    LIMITS OF LIABILITY

A.    <u>**Maximum Limits of Liability - Insuring Agreements**</u>

    (1)   The Limits of Liability for the Insuring Agreements as set forth in this Section V. A. are part of, and not in addition to, the Aggregate Limit of Liability shown in Item 4 (c) of the Declarations.

    (2)   As respects Insuring Agreement A., the amount set forth in Item 4 (a) of the Declarations ("Per-Claim - Insuring Agreement A.") is the most the **Insurer** will be liable to pay for **Damages** for any **Claim** under this Insuring Agreement. **Defense Expenses** are not part of, and are in addition to, the amount shown in Item 4 (a) of the Declarations.

(3)    As respects Insuring Agreements B. (1) and B. (2), the amount set forth in Item 4 (b) of the Declarations ("Per-Claim - Insuring Agreements B. (1) and B. (2)") is the most the **Insurer** will be liable to pay for **Damages** for any **Claim** under these Insuring Agreements. **Defense Expenses** are not part of, and are in addition to, the amount shown in Item 4 (b) of the Declarations.

(4)    As respects Insuring Agreement B. (3), $150,000 is the most the **Insurer** will be liable to pay for **Damages** for all **Claims** for **Fire Damage** under this Insuring Agreement, regardless of the number of such **Claims**.

(5)    As respects Insuring Agreement C., $25,000 is the most the **Insurer** will be liable to pay for: (a) **Damages** and **Defense Expenses** for all **Claims** under this Insuring Agreement, regardless of the number of such **Claims**; and (b) all notification costs arising from a **Privacy Wrongful Act** under paragraph (2) of this Insuring Agreement, regardless of the number of such **Privacy Wrongful Acts**. Such **Defense Expenses** are part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 4 (c) of the Declarations.

(6)    If the **Insurer** has named an additional **Named Insured** in Item 1(b) of the Declarations, the applicable Limits of Liability will apply separately to each such additional **Named Insured**, but only with respect to the coverage provided under Insuring Agreement A.

B.    <u>**Aggregate Limit of Liability**</u>

The amount set forth in Item 4 (c) of the Declarations ("Aggregate") is the maximum total amount the **Insurer** will be liable to pay for:

(a)    **Damages** for all **Claims** under Insuring Agreements A. and B.; and

(b)    **Damages** and **Defense Expenses** for all **Claims** and notification costs under Insuring Agreement C.,

regardless of the number of **Claims** under all Insuring Agreements, including **Claims** involving, or at any time involving, any allegation of **Sexual Misconduct**.

C.    <u>**Maximum Limit of Liability - Sexual Misconduct**</u>

$25,000 is the most the **Insurer** will be liable to pay for all **Claims** against the **Insured** involving any **Sexual Misconduct** by the **Insured** or by any person for whom the **Insured** may be legally responsible. If any **Sexual Misconduct** is alleged at any stage during a **Claim**, all allegations in that **Claim** which arise out of the same or related professional treatment or relationship will be subject to that $25,000 maximum. If the **Insurer** has paid this $25,000 maximum, it will no longer have any duty to defend any **Claim** involving any **Sexual Misconduct**. This $25,000 maximum is part of, and not in addition to, the Limits of Liability shown in Items 4 (a) and 4 (c) of the Declarations.

D.     <u>**Maximum Limit of Liability - Punitive Damages**</u>

$25,000 is the most the **Insurer** will be liable to pay for punitive or exemplary damages, or the multiple portion of any multiplied damages award arising from a **Claim**, regardless of the number of such **Claims**. The **Insurer** will be liable for such damages only to the extent such damages are insurable under the applicable law. This $25,000 maximum is part of, and not in addition to, the Limits of Liability shown in Items 4 (a) and 4 (c) of the Declarations.

E.     <u>**Maximum Limits of Liability - Additional Coverages**</u>

(1)     The Limits of Liability applicable to Section II., Additional Coverages, are in addition to, and not part of, the Limits of Liability applicable to Section I., Insuring Agreements.

(2)     As respects Additional Coverage D., the amount set forth in Item 4 (d) of the Declarations ("Per Proceeding") is the most the **Insurer** will be liable to pay for **Defense Expenses** incurred with respect to each **Proceeding**.

(3)     As respects Additional Coverage E., $100,000 is the most the **Insurer** will be liable to pay for **Medical Payments** caused by an **Occurrence**, regardless of the number of such **Occurrences**.

(4)     $15,000 is the most the **Insurer** will reimburse the **Insured** for the costs and expenses for medical supplies under Additional Coverage F., including one (1) hour of the **Insured's** lost earnings at $100.00 per hour or the **Insured's** average hourly rate charged for **Professional Services**, whichever is less.

(5)     $25,000 is the most the **Insurer** will reimburse the **Insured** for medical expenses as a result of **Bodily Injury** or **Property Damage** caused by an **Assault or Battery** under Additional Coverage G.

(6)     If the **Insurer** has named an additional **Named Insured** in Item 1 (b) of the Declarations, the Limits of Liability shown in the Declarations will apply separately to each such additional **Named Insured**, but only with respect to the coverage provided under Additional Coverage D.

F.     <u>**Effect of Paying Limits of Liability**</u>

(1)     If the **Insurer** fully pays the **Sexual Misconduct** Limit of Liability set forth in paragraph C. of this Section V., it will have no duty to pay any additional amount(s) in connection with any **Claim** involving, or that at any time involved, any allegation of **Sexual Misconduct**.

(2)     If the **Insurer** fully pays the **Fire Damage** Limit of Liability set forth in paragraph A. (4) of this Section V., it will have no duty to pay any additional amount(s) in connection with any **Claim** involving **Fire Damage**.

(3)     If the **Insurer** fully pays the **Privacy Wrongful Act** Limit of Liability set

forth in paragraph A. (5) of this Section V., it will have no duty to pay any additional amount(s) in connection with any **Claim** involving, or any notification costs arising from, a **Privacy Wrongful Act**.

(4) If the **Insurer** fully pays the Limit of Liability applicable to a particular **Claim** under Insuring Agreements A., B. or C., it will have no duty to pay any additional amount(s) under Additional Coverages A., B. or C. in the event such Additional Coverage(s) would otherwise apply to such **Claim**.

(5) If the **Insurer** fully pays the Aggregate Limit of Liability set forth in Item 4 (c) of the Declarations, it will have no duty to: (i) pay any additional amount(s) in connection with any **Claim**, whether or not the Limit of Liability applicable to such **Claim** has been exhausted; (ii) defend any **Claim**; (iii) pay any additional amount(s) under Insuring Agreement  C. (2); or (iv) pay any additional amount(s) under Section II., Additional Coverage.

VI.    **NOTICE PROVISIONS**

A.    The **Insured** must give the **Insurer** or its authorized agent written notice of any:

(1)    **Claim** as soon as practicable after it is first made; or

(2)    **Proceeding** as soon as practicable after it is first brought,

but in no event more than sixty (60) days after the end of the **Policy Period**.

However, in the event the **Insured** has obtained an Extended Reporting Period endorsement pursuant to Section VIII., notice of a **Claim** may be provided during the Extended Reporting Period.

B.    The **Insured** must also, as soon as possible, record and notify the **Insurer** of the specifics of the **Claim** or **Proceeding** and the date the **Insured** first received notice of it.

C.    The **Insured** must provide the **Insurer** or its authorized agent with a copy of all demands or legal papers the **Insured** receives as respects a **Claim** or **Proceeding**.

D.    If, during the **Policy Period**, the **Insured** first becomes aware of a **Professional Incident**, **Occurrence** or **Privacy Wrongful Act** which the **Insured** believes may give rise to a **Claim**, in order for any resulting **Claim** to be covered, the **Insured** must give the **Insurer** or its authorized agent written notice during the **Policy Period** of such **Professional Incident**, **Occurrence** or **Privacy Wrongful Act**. Such notice must state when and where the **Professional Incident**, **Occurrence** or **Privacy Wrongful Act** took place, the names and addresses of any witnesses and/or injured people, and the nature and location of any injury or damage.

E.    Solely as respects "notification costs" coverage under Insuring Agreement C. (2), the **Insured** must give the **Insurer** or its authorized agent written notice of the

**Privacy Wrongful Act** as soon as practicable and obtain the **Insurer's** prior written approval before incurring notification costs as respects such **Privacy Wrongful Act**.

F.　　Solely as respects **Medical Payments** coverage under Additional Coverage E., the **Insured** must give the **Insurer** or its authorized agent written notice of the **Occurrence** as soon as practicable after it takes place, but in no event more than sixty (60) days after the end of the **Policy Period**. In addition, such **Medical Payments** must be reported to the **Insurer** within ninety (90) days from the date such medical treatment or service was rendered to the injured **Business Invitee**.

## VII.　DEFENSE OF CLAIM AND SETTLEMENT

Except as respects a **Claim** under Insuring Agreement C., the **Insurer** has the right and duty to defend, at the **Insurer's** expense and using counsel selected by the **Insurer**, any **Claim** against the **Insured** covered under this Policy, even if the **Claim** is groundless or fraudulent. The **Insurer** also has the right to investigate any **Claim** and, with the **Insured's** written consent, to settle any **Claim** if the **Insurer** believes that settlement is proper. If the **Insured** withholds consent to a settlement recommended by the **Insurer** and acceptable to the claimant, the issue shall be submitted to binding arbitration pursuant to Section XVII.

Solely as respects a **Claim** under Insuring Agreement C., the **Insured** has the duty to defend, using counsel selected by the **Insured** and approved in advance by the **Insurer**, any **Claim** against the **Insured** covered under such Insuring Agreement.

The **Insureds** agree to give the **Insurer** full cooperation and provide such information as the **Insurer** may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of any indemnification or contribution rights.

The **Insurer** does not assume any duty to defend any **Proceeding**. However, the **Insurer** shall have the right, but not the duty, to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Proceeding**.

The **Insured** shall not admit or assume any liability, incur any **Defense Expenses**, offer to settle any matter, enter into any settlement agreement or stipulate to any judgment without the **Insurer's** prior written consent, such consent not to be unreasonably withheld. Any amounts incurred by the **Insured** or any settlements or judgments agreed to by the **Insured** without such consent shall not be covered by this Policy.

## VIII.　EXTENDED REPORTING PERIOD

A.　　If the **Insured** or the **Insurer** cancels or non-renews this Policy, the **Insured** has the right to buy an Extended Reporting Period endorsement. However, the **Insured** will not have this right if the **Insurer** cancels for non-payment of premium.

B.　　The Extended Reporting Period endorsement will apply only to otherwise covered **Claims** for **Professional Incidents**, **Privacy Wrongful Acts** or **Occurrences** first taking place on or after the **Retroactive Date**, but before the end of the **Policy Period**. This endorsement will apply to **Claims** that are first

made against the **Insured** after the **Policy Period** and during the Extended Reporting Period, and that are reported in writing to the **Insurer** or its authorized agent as soon as practicable after they are made, but in no event later than ninety (90) days after the **Insured** first becomes aware of a **Claim** against the **Insured**. Any such **Claims** will be deemed to have been first made during the **Policy Period** and will be subject to the same applicable Limits of Liability set forth in Item 4 of the Declarations. This Extended Reporting Period endorsement shall not increase or amend the applicable Limits of Liability.

C.    To obtain the Extended Reporting Period endorsement the **Insured** must request it from the **Insurer** in writing within ninety (90) days after the **Policy Period** ends and pay the **Insurer** the premium when due. If the **Insured** does so, neither the **Insured** nor the **Insurer** may cancel the Extended Reporting Period endorsement. The premium will be the amount shown in Item 7 of the Declarations and shall be deemed fully earned at the inception of the Extended Reporting Period endorsement.

D.    The **Insurer** will not charge an **Insured** a premium for the Extended Reporting Period endorsement if such **Insured**:

    (1)    dies or becomes permanently disabled, so that such **Insured** cannot continue to practice; or

    (2)    permanently retires, is at least 55 years old, and has been insured by the **Insurer** or an affiliate thereof for 5 consecutive years.

E.    Paragraph D. above shall apply only in the event that the **Insured** or a legal representative thereof:

    (1)    requests such endorsement from the **Insurer** in writing within ninety (90)days after the **Policy Period** ends;

    (2)    provides the **Insurer** with reasonable proof of death, permanent disability or permanent retirement, as applicable; and

    (3)    provides the **Insurer** with written confirmation that: (i) as respects an **Insured** described in D. (2) above, during the 5 years prior to the end of the **Policy Period**, there has not been a **Claim** against such **Insured** for **Sexual Misconduct**, nor has the **Insured** engaged in any **Sexual Misconduct** which may result in such a **Claim**.

F.    If an **Insured** permanently retires, but does not meet any of the other requirements set forth in paragraph D. above, such **Insured** will be required to pay the premium amount shown in Item 7 of the Declarations.

G.    If the **Insurer** does not receive the **Insured's** written request and payment as required in this Section VIII., the **Insured** will have no right to purchase an Extended Reporting Period endorsement at any later date.

## IX.    OTHER INSURANCE

The insurance provided by this Policy shall apply only as excess over any other valid and collectible insurance, self-insurance plan or self-funded vehicle whether such other insurance, plan or vehicle is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance, plan or vehicle is written specifically as excess insurance over the applicable Limits of Liability provided by this Policy. Except as respects the coverage provided under Insuring Agreement C., this Policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Damages** or **Defense Expenses**. This Policy shall not be subject to the terms and conditions of any other insurance policy.

Two or more policies of Psychologists' Professional and Business Liability Insurance may have been issued by the **Insurer** or an affiliate thereof to persons or organizations other than the **Insured**. These policies may also provide coverage for a **Claim** or **Proceeding** involving the same or continuous, repeated, or related **Professional Incidents**, **Privacy Wrongful Acts** or **Occurrences** for which the **Insured** and persons or organizations covered in those other policies are jointly and severally liable. In such an event, and subject to the Limits of Liability set forth in the Declarations and Section V., the **Insurer** shall not be liable under this Policy for a greater proportion of the total loss from that **Claim** or **Proceeding** than this Policy's applicable Limits of Liability bears to the total applicable Limits of Liability under all such policies. In addition, the total amount payable under the applicable Limits of Liability under all such policies in connection with that **Claim** or **Proceeding** will not exceed the highest single per **Claim** or **Proceeding** Limit of Liability under any of such policies.

## X.    REPRESENTATIONS

By accepting this Policy, the **Insured** agrees that the particulars and statements in the application submitted in connection with the underwriting of this Policy are true and that they are the **Insured's** agreements and representations.

The **Insured** acknowledges that this Policy is issued in reliance upon the truth of those particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy and which are the basis for this Policy.

## XI.    CANCELLATION

The first **Named Insured** may cancel this Policy by surrendering it to the **Insurer** or to any of its authorized agents, or by mailing the **Insurer** written notice stating when thereafter the cancellation will be effective. The **Insurer** may cancel this Policy by mailing to the first **Named Insured** at the address shown in Item 1 (a) of the Declarations written notice stating when, not less than ninety (90) days thereafter, such cancellation will be effective. However, if the first **Named Insured** has not paid a premium when due, the **Insurer** may cancel this Policy by mailing to the first **Named Insured** at the address shown in Item 1 (a) of the Declarations written notice stating when, not less than fifteen (15) days thereafter, such cancellation will be effective.

The mailing of the notice as stated above will be sufficient proof of notice. The time of surrender or the effective date of cancellation stated in the notice will become the end of the **Policy Period**. Delivery of written notice will be the equivalent of mailing.

If the first **Named Insured** cancels this Policy, the unearned premium will be computed in accordance with the customary short rate table and procedure. If the **Insurer** cancels, unearned premium will be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XII.   AUTHORIZATION AND NOTICES

The **Insureds** agree that the first **Named Insured** named in Item 1 (a) of the Declarations shall act on behalf of all **Insureds** with respect to all matters pertaining to this Policy including: (1) giving notice of any **Claim** or circumstance which may result in a **Claim**; (2) giving notice and information regarding any Additional Coverages under Section II.; (3) giving and receiving of all correspondence and information; (4) giving and receiving notice of cancellation; (5) consenting, or withholding consent, to the settlement of a **Claim** recommended by the **Insurer**; (6) payment of premiums; (7) receiving of any return premiums; (8) receiving and accepting of any endorsements issued to form a part of this Policy; and (9) the exercising of any right to an Extended Reporting Period endorsement pursuant to Section VIII.

## XIII.   TERRITORY

This Policy applies to **Professional Incidents**, **Privacy Wrongful Acts** or **Occurrences** taking place anywhere in the world, to the extent permitted by law. However, any **Claim** or **Proceeding** arising from such **Professional Incidents**, **Privacy Wrongful Acts** or **Occurrences** must be made and brought in the United States of America, its territories and possessions, Puerto Rico or Canada.

## XIV.   ASSIGNMENT AND CHANGES TO THE POLICY

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

If an **Insured** dies or is declared legally incompetent, such **Insured's** rights and duties will be transferred to such **Insured's** legal representative while acting within the scope of his or her duties as such. Until such **Insured's** legal representative is appointed, anyone having temporary custody of such **Insured's** property will be covered under Insuring Agreement B. (1).

This Policy contains all the agreements between the **Insured** and the **Insurer** or its authorized agents concerning this insurance.

Notice to any agent or knowledge possessed by any agent or person acting on the **Insurer's** behalf, will not result in a waiver or change in any part of this Policy or prevent the **Insurer** from asserting any right under the terms and conditions of this Policy. The terms and conditions of this Policy may only be waived or changed by written endorsement signed by the **Insurer**.

## XV.   BANKRUPTCY

The bankruptcy or insolvency of the **Insured** or the **Insured's** estate does not relieve the **Insurer** of its obligations under the Policy.

## XVI.   SUBROGATION

In addition to any right of subrogation existing at law, in equity or otherwise, in the event of any payment by the **Insurer** under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured(s)'** rights of recovery. The **Insured(s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights.  The **Insurer** shall not exercise its subrogation rights against any natural person **Insured**, unless Exclusion A. above applies to such **Insured**.

## XVII.   ARBITRATION

Solely in the event that the first **Named Insured** withholds consent to a settlement recommended by the **Insurer** and acceptable to the claimant, it is agreed by the **Insured** and the **Insurer** that this issue will be resolved by submitting it to binding arbitration.

The Arbitration Panel shall consist of three persons who must be either a:

(i)     practicing **Psychologist** who is an active member of his or her professional   association; or

(ii)    lawyer with substantial experience in handling, settling or defending **Psychologist** professional liability claims or disputes.

The first **Named Insured** and the **Insurer** shall each have the right to designate one arbitrator, who together shall select an umpire.

The **Insurer** shall serve a demand for arbitration as soon as practicable, but no later than fifteen (15) days after the **Insurer's** receipt of notice that the first **Named Insured** declines to consent to a recommended settlement.  Such demand for arbitration shall include the name of the arbitrator selected by the **Insurer**.

The first **Named Insured**, within fifteen (15) days of the receipt of such demand, shall select an arbitrator and notify the **Insurer** of the name of such second arbitrator. If first **Named Insured** fails or refuses to nominate the second arbitrator within fifteen (15) days following the receipt of such demand, the **Insurer** will, within an additional period of fifteen (15) days, apply to a court of applicable jurisdiction for the appointment of the second arbitrator and in such case the arbitrator appointed by such court shall be deemed to have been nominated by the first **Named Insured**.

The two arbitrators, chosen as provided above, shall within twenty (20) calendar days after the appointment of the second arbitrator select an umpire. Upon the umpire's acceptance of this appointment, the Arbitration Panel for the controversy in question shall be deemed fixed.

The Arbitration Panel shall establish, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Panel, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

It shall be a condition for the submission of the issue of a recommended settlement to

arbitration that the **Insurer** and the first **Named Insured** each release the arbitrators from liability arising out of or in connection with the arbitration.

The Arbitration Panel shall render a decision, which shall be considered final, within ten (10) days of the selection of the umpire as described above. In the event the Arbitration Panel does not render a decision within the foregoing time period, the **Insurer** shall continue to provide a legal defense to the **Insured** in accordance with the terms of the Policy.

Where the recommended settlement is found by a majority of the Arbitration Panel to be reasonable under the circumstances, the **Insurer** shall have the right to enter into such settlement without the first **Named Insured's** consent. If a majority of the Arbitration Panel determines that the recommended settlement is not reasonable under the circumstances, the **Insurer** shall not have the right to enter into such settlement without the first **Named Insured's** consent.

All costs incurred by the **Insured** in connection with the arbitration shall be paid by the **Insurer.** Such payments are not part of, and are in addition to, the applicable Limits of Liability set forth in Item 4 of the Declarations and in Section V.

## XVIII. ACTION AGAINST INSURER

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this Policy and the amount of the **Insured's** obligation has been fully determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the **Insurer.**

## XIX. HEADINGS

The descriptions in the headings and any subheading of this Policy, including any titles given to any endorsement attached hereto, are inserted solely for convenience and do not constitute any part of this Policy's terms or conditions.

**ENDORSEMENT NO.**

**PENNSYLVANIA STATE AMENDATORY**

This Endorsement, effective at 12:01 a.m. on 10/01/2018, forms part of

      Policy No. 5010-5362
      Issued to: Harmony Mental Health Services, Inc.
      Issued by: Allied World Assurance Company

In consideration of the premium charged, it is understood and agreed that:

1.      Section V. LIMITS OF LIABLITY is amended to include the following:

      G.      <u>Pre-judgment Interest</u>

            In accordance with the Supreme Court of Pennsylvania Rule of Civil Procedure 238, the **Insurer** shall pay all pre-judgment interest incurred by the **Insured** as the result of a **Claim** under this Policy. Any such payments by the **Insurer** shall be in addition to the Limits of Liability contained within this Policy and the Declarations.

2.      Section XI. CANCELLATION is deleted in its entirety and replaced as follows:

      XI.      **CANCELLATION AND NON-RENEWAL**

          1.      The first **Named Insured** may cancel this Policy by surrendering it to the **Insurer** or to any of its authorized agents, or by mailing the **Insurer** written notice stating when thereafter the cancellation will be effective. If the first **Named Insured** cancels this Policy, the unearned premium will be computed in accordance with the customary short rate table and procedure.

          2.      This Policy may be canceled by the **Insurer** by delivering or mailing written notice to the first **Named Insured**, at its last known address, at least ninety (90) days prior to the effective date of such cancellation, for the following reasons:

              (a)      a condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the **Policy Period**;

              (b)      loss of reinsurance or a substantial decrease in reinsurance, which loss or decrease shall, at the time of cancellation, be certified to the Insurance Commissioner of Pennsylvania as directly affecting in-force policies;

              (c)      the Policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the **Insurer**;

              (d)      material failure to comply with the policy terms, conditions or contractual duties;

              (e)      any other reason that the Insurance Commissioner of Pennsylvania may approve.

            Such notice shall include the reason(s) for cancellation and shall also state that, at

the first **Named Insured's** written request, the **Insurer** shall provide loss information to the first **Named Insured**. The first **Named Insured's** written request must be made within ten (10) days from the first **Named Insured's** receipt of notice.

3.   This Policy may be canceled by the **Insurer** by delivering or mailing written notice to the first **Named Insured**, at its last known address, at least fifteen (15) days prior to the effective date of such cancellation, for the following reasons:

    (a)   the **Insured** has made a material misrepresentation which affects the insurability of the risk; or

    (b)   the **Insured** failed to pay a premium when due.

Such notice shall include the reason(s) for cancellation and shall also state that, at the first **Named Insured's** written request, the **Insurer** shall provide loss information to the first **Named Insured**. The first **Named Insured's** written request must be made within ten (10) days from the first **Named Insured's** receipt of notice.

4.   If the **Insurer** cancels, unearned premium will be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

5.   The **Insurer** will not be required to renew this Policy upon its expiration. If the **Insurer** elects not to renew this Policy, the **Insurer** will deliver or mail by first-class or certified mail written notice, to the first **Named Insured**, at its last known address, to that effect, at least sixty (60) days before the expiration date set forth in Item 3. of the Declarations. Such notice shall state the specific reason(s) for non-renewal.

6.   If the **Insurer** increases the premium upon renewal, the **Insurer** will deliver or mail to the **Named Insured**, at its last known address, written notice to that effect at least thirty (30) days before the expiration date set forth in Item 3. of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

# ALLIED WORLD

**FOR OFFICE USE ONLY**
PREMIUM: _1710_
RATED BY: _CC_
EFFECTIVE DATE: _____
RETRO DATE: _10.1.18_
REFUND AMOUNT DUE: _$ 12_

Allied World Insurance Company ("Insurer")

**Return and make checks payable to:**
**American Professional Agency, Inc.**
**95 Broadway, Amityville, NY 11701**
**(631) 691-6400 • (800) 421-6694**

Account # _____

*OCT - 1 2018*
*AMERICAN PROFESSIONAL AGENCY*

## RENEWAL APPLICATION
## FOR PSYCHOLOGISTS' PROFESSIONAL AND BUSINESS LIABILITY INSURANCE COVERAGE

**Offered through the Professional Counselors Purchasing Group, Inc.**

Notice to Florida Applicants:
License # A127510 issued to Richard C. Imbert

Notice to Iowa Applicants:
License # IA000000010776 issued to Richard C. Imbert

Notice to California Applicants:
License #0555091 issued to American Professional Agency, Inc.

**NOTICE: THE COVERAGE OF A CLAIMS-MADE POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED, OR PROCEEDINGS FIRST BROUGHT, DURING THE POLICY PERIOD, AND REPORTED IN WRITING TO THE INSURER IN ACCORDANCE WITH THE TERMS OF THE POLICY. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR LEGAL OR INSURANCE ADVISOR.**

**NOTICE: A LOWER LIMIT OF LIABILITY APPLIES TO JUDGMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE SECTION V. (C), "MAXIMUM LIMIT OF LIABILITY - SEXUAL MISCONDUCT" IN THE POLICY).**

- This Application must be completed in full, including all required attachments. Write "None" if that applies.
- Attach a separate sheet of paper if more space is needed to answer any question.
- We treat all Applications as confidential. If additional assurances of confidentiality are required, we are willing to address the Applicant's needs.

**PLEASE READ THE ENTIRE APPLICATION CAREFULLY BEFORE SIGNING.**

### I. GENERAL INFORMATION

1. (a) Name of Applicant: _Harmony Mental Health Services, Inc._   License No.: _____   Date of Birth: _____
   E-mail address: _____   Office Telephone: ( ) _____
   Home Telephone: ( ) _____   Fax Number: ( ) _____

   (b) Coverage desired (check one):

   ☐ Individual   ☐ Partnership   ☐ Professional Corporation (Incorporated as a P.C. or P.A.)   ☐ LLC/LLP
   ☐ General Business Corporation: ☐ Profit   ☐ Nonprofit   ☒ Other (Please explain) _Subchapter C corp._

   (If you are unsure of your corporate status, please check your Articles of Incorporation or other business documents.)

   **If you have checked anything other than "Individual" above, the following MUST BE INCLUDED: (1) a copy of articles of incorporation; (2) a letter describing all services provided; (3) any brochures if available; and (4) a listing of owners and/or partners, indicating the percentage of the business owned by each.**

### II. APPLICANT INFORMATION

**HAVE ANY OF YOUR RESPONSES TO QUESTIONS 2 OR 3 BELOW CHANGED SINCE THE COMPLETION OF YOUR LAST APPLICATION WITH THE INSURER FOR THIS COVERAGE? IF YES, PLEASE RESPOND TO THOSE QUESTIONS WITH YOUR CHANGES. IF NOT, PLEASE SKIP TO SECTION III.**

2. Mailing Address: _____

   _____
   (City)          (County)          (State)          (Zip code)

3.  (a)  Policy Limits Requested (check one option):

☐ $100,000/$300,000   ☐ $500,000/1,000,000   ☐ $1,000,000/1,000,000   ☐ $1,000,000/3,000,000
☐ $1,000,000/4,000,000   ☐ $1,000,000/5,000,000   ☐ $2,000,000/2,000,000   ☐ $2,000,000/4,000,000

The <u>first</u> Limit of Liability is applicable to each claim. All claims arising from a wrongful act, or a series of continuous, repeated or related wrongful acts, are treated as one claim. The <u>second</u> limit is the annual aggregate for all claims, which is the most the Insurer is liable for.

(b)  Are you interested in obtaining limits higher than $5,000 for defense expenses related to licensing board investigations and other proceedings as described in the Policy?    ☐ Yes  ☐ No

If yes, choose the higher limit of liability desired for defense expenses related to licensing board investigations and other proceedings as described in the Policy:

☐ $25,000        ☐ $50,000        ☐ $75,000
☐ $100,000       ☐ $125,000       ☐ $150,000

(c)  Have you ever had a request to increase your limits of liability for defense expenses for proceedings declined?
☐ Yes  ☐ No        If yes, please explain:

_____

## III.  PRACTICE CHARACTERISTICS

**HAVE ANY OF YOUR RESPONSES TO QUESTIONS 4 THROUGH 12 BELOW CHANGED SINCE THE COMPLETION OF YOUR LAST APPLICATION WITH THE INSURER FOR THIS COVERAGE?  IF YES, PLEASE RESPOND TO THOSE QUESTIONS WITH YOUR CHANGES.  IF NOT, PLEASE SKIP TO SECTION IV.**

4.  List your name and qualifications. In addition, list the names and qualifications of all your salaried (W2) employees, except clerical. If you are applying for a partnership policy, please list all partners as well.  Please use a separate sheet of paper if additional space is required. Please include the premium charge indicated on the rate schedule for yourself and each employee and/or partner.

| Name | Degree | Date Degree Received | Field of Study | # of hours practice each week* | License or Certification** | | | |
|------|--------|------|------|------|------|------|------|------|
|  |  |  |  |  | First Year Licensed/Cert | State | Title | License Number |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

To qualify for the New Graduate Discount, we need the exact date you received your degree (must be within one year) and a statement indicating this is the first time practicing professionally.

* You must include <u>all</u> hours you practice as a Psychologist (privately and as an employee). If your total number of hours exceeds 20, you do not qualify for the part-time rate.

**If you are not licensed, certified or registered in the field of mental health, you must indicate how you are practicing legally in your state.  If you are supervised we must be in receipt of your supervisors' name, degree, field of study and license (title and number)(See Question 5).

(a) Are you entering into the practice of psychology for the first time?    ☐ Yes        ☐ No

5.  If you are not licensed, certified or registered in the field of mental health, you must indicate the following information with your application and payment for review of acceptability.
(a)  The name of your supervisor: _____
(b)  Supervisor's degree, field of study, license and/or certification:_____
*(Supervision must be provided by a professional who is fully licensed as a Psychologist)*

6.  Please list the number of your entire employed staff (except clerical) including yourself. _____
    *Note: Your staff is defined as your direct employees (for whom you file a W-2 form) and their names and credentials must be included with yours under Question 4. to correspond with the number listed here.*

7.  Is the applicant a member in good standing of any professional association?  ☐ Yes  ☐ No
    (a)  If so, state the organization and type of membership.
         (i.e. Regular, Clinical, Associate, Student, etc.): _____

8.  (a)  Are you engaged in self-employment, paid consultation (1099 form), private practice or volunteer work?
                                                                                        ☐ Yes   ☐ No
    (b)  Are you currently practicing in a prison setting?                             ☐ Yes   ☐ No

9.  Are you employed (a W-2 form employee)?                                            ☐ Yes   ☐ No
    If yes, on a full-time or part-time (20 hours or less) basis?  ☐ Full-Time  ☐ Part-Time

    If yes, please complete the information below.
    (a)  Name of your employer: _____
    (b)  Address of your employer: _____

    *If you are **both** self-employed and a W-2 employee, and wish to apply for part-time self-employed coverage, a separate statement indicating that you are fully insured by your employer at your W-2 employment must be submitted.*

10. Do you or any person named in Question 4. own, partly own, manage or exercise any form of fiduciary control over any business enterprise that provides psychological services?                                          ☐ Yes   ☐ No

    If yes, please explain, and include the name of the business or enterprise: _____

    _____

11. (a)  Does the Applicant use any Independent Contractors or Consultants (1099 form) whose services are in the mental health field and who you do billing for, share fees with or in any way derive income from the relationship?   ☒ Yes  ☐ No

    (b)  If yes, please list the name and professional credentials of each one.

    All Independent Contractors or Consultants (1099 form) must be listed and the premium shown on the rate schedule included. **You will be covered for their acts subject to the terms of the policy, but the independent contractors or consultants listed will not be insureds under the policy.**

    | Name of Independent Contractor or Consultant | Degree | Field of Study | License or Certification State | Title |
    |---|---|---|---|---|
    | Mere Edelstein | M D | Psychiatry | PA | |
    | Karen Glick | Psy. D. | Psychology | PA | |

    *If additional space is required, please use a separate sheet of paper to submit a complete listing.*

12. Has any person or entity based on a contractual obligation requested that they be added to your policy as an Additional Insured ?
                                                                                        ☐ Yes  ☐ No

    (a)  Name of proposed Additional Insured: _____

    (b)  Address of proposed Additional Insured: _____

    (c)  The Additional Insured is my:
         ☐ Employer    ☐ Landlord    ☐ Professional Corporation  ☐ Other (Specify): _____

    (d)  The Additional Insured gives me the following form to file with the IRS:
         ☐ W-2 form    ☐ 1099 form   ☐ Other (Specify): _____

    (e)  Describe the relationship between you and the Proposed Additional Insured: _____

    _____

    (f)  Are you requesting that the person or entity named in 12(a) above be added as an Additional Insured in order to fulfill a contractual obligation?                                          ☐ Yes  ☐ No

If yes, provide full particulars: _____

---

## IV. REPRESENTATIONS

### ALL RENEWAL APPLICANTS MUST COMPLETE THIS SECTION.

**13. After inquiry* of each individual listed in Question 4:**
   * "After inquiry" means that the Applicant has inquired of each person as to whether he/she has information pertinent to this question.

If you answer "Yes" to any question below, please include all documents pertinent to the situation you are describing.

(a) Has any person named in Question 4, including yourself, ever been convicted of a crime in any state or country? ☐Yes ☒No
If yes, please give full particulars in order for your Application to be considered. _____

_____

(b) Has any person named in Question 4, including yourself, ever had any licensing board or professional ethics body
require the surrender of a license or found any such person or you guilty of a violation of ethics codes, professional misconduct,
unprofessional conduct, incompetence or negligence in any state or country? ☐Yes ☒No

If yes, please give full particulars and provide copies of charges, correspondence and any findings in order for your
Application to be considered.

_____

(c) Are there any complaints, charges or investigations pending against any person named in Question 4, including
yourself, by a licensing board or professional ethics body for violation of ethics codes, professional misconduct,
unprofessional conduct, incompetence or negligence in any state or country? ☐Yes ☒No

If yes, please give full particulars and copies of charges, correspondence and any findings in order for your
Application to be considered._____

_____

### NOTE: MISSOURI APPLICANTS DO NOT RESPOND TO QUESTION 14.(d)

(d) Has any person named in Question 4, including yourself, ever had any insurance company or Lloyd's decline,
cancel, refuse to renew, or accept only on special terms any professional liability insurance? ☐Yes ☒No

If yes, please give full particulars in order for your Application to be considered._____

_____

(e) Has any professional liability claim or suit ever been made against any person named in Question 4, including
yourself, their predecessors in business or against any past or present partner(s)? ☐Yes ☒No

If yes, please give full particulars and copies of any summons and complaints, pertinent correspondence and
outcome, if any, in order for your Application to be considered.

_____

(f) Are there any circumstances, including any loss of private or confidential information, of which any person named in Question 4, including
yourself, is aware of that may result in any professional liability claim or suit being made against any person named in Question 4, including
yourself, their predecessors in business or against any past or present partner(s)? ☐Yes ☐No

If yes, please give full particulars in order for your Application to be considered._____

_____

(g) Is any person named in Question 4, including yourself, engaged in or ever been engaged in any sexual misconduct* with any of your current
or former patients or any current or former patient's spouse or any person with a direct relationship to the current or former patient (for
example a guardian, blood relative of the patient or spouse or any person sharing the patient's domicile)? ☐Yes ☒No

*(\*"Sexual misconduct" means any actual or alleged erotic physical contact or attempt, threat or proposal thereof.)*

If yes, please give full particulars in order for your Application to be considered.

_____

(h) Are you now being or have you ever been treated for a serious health problem that did or can impair your ability to treat clients?

☐ Yes  ☒ No

If yes, please give full particulars in order for your Application to be considered.

_____

---

## V.  NOTICES TO APPLICANT & FRAUD WARNINGS

The undersigned, as authorized agent of all individuals and entities proposed for this insurance, represents that, to the best of his/her knowledge and belief, after diligent inquiry, the statements in this Application and any attachments or information submitted to or obtained by the Insurer in connection with this Application (together referred to as the "Application") are true and complete.

The information in this Application is material to the risk accepted by the Insurer. If a policy is issued it will be in reliance by the Insurer upon the Application, and the Application will be the basis of the contract.  The Application is on file with the Insurer, and shall be deemed to be attached to, and made a part of, and incorporated into the Policy, if issued.

The Insurer is authorized to make any inquiry in connection with this Application. The Insurer's acceptance of this Application or the making of any subsequent inquiry does not bind the Applicant or the Insurer to complete the insurance or issue a policy.

If the information in this Application materially changes prior to the effective date of the Policy, the Applicant will immediately notify the Insurer, and the Insurer may modify or withdraw any quotation or agreement to bind insurance.

**NOTICE TO ALABAMA APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF."

**NOTICE TO ARKANSAS APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO COLORADO APPLICANTS:** "IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES."

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** "WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT."

**NOTICE TO FLORIDA APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE."

**NOTICE TO HAWAII APPLICANTS:** "FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OF BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH."

**NOTICE TO KENTUCKY APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

**NOTICE TO LOUISIANA APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO MAINE APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

**NOTICE TO MARYLAND APPLICANTS:** "ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO NEW JERSEY APPLICANTS:** "ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES."

**NOTICE TO NEW MEXICO APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES."

**NOTICE TO NEW YORK APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

**NOTICE TO OHIO APPLICANTS:** "ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

**NOTICE TO OKLAHOMA APPLICANTS:** "WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY (365:15-1-10, 36 §3613.1)."

**NOTICE TO OREGON APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD OR SOLICIT ANOTHER TO DEFRAUD AN INSURER: (1) BY SUBMITTING AN APPLICATION, OR (2) BY FILING A CLAIM CONTAINING A FALSE STATEMENT AS TO ANY MATERIAL FACT, MAY BE VIOLATING STATE LAW."

**NOTICE TO PENNSYLVANIA APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES."

**NOTICE TO RHODE ISLAND APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO TENNESSEE APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS."

**NOTICE TO TEXAS APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON."

**NOTICE TO VERMONT APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW."

**NOTICE TO VIRGINIA APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS."

**NOTICE TO WASHINGTON APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS."

**NOTICE TO WEST VIRGINIA APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO ALL OTHER APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

---

## VI. DECLARATION AND SIGNATURE

*I understand that is it my obligation to maintain any license required in the jurisdictions in which I practice.*

Date: 9 - 24 - 18          Signature: _Dan Jan McGuff PM_
(This application must be dated within 30 days of receipt)          (APPLICANT / OWNER / PRESIDENT OF CORPORATION)

Title: _President / Owner_

Application must be signed, dated, fully completed and accompanied by the premium to be considered.

**Please make checks payable and mail to: American Professional Agency, Inc.**
Program Administrator:
AMERICAN PROFESSIONAL AGENCY, INC.
95 Broadway, Amityville, NY 11701
(631) 691-6400 • (800) 421-6694
www.americanprofessional.com

Producer Signature:

# HARMONY MENTAL HEALTH SERVICES, INC.

2400 Chestnut Street ▪ Philadelphia, PA  19103 ▪ Phone: (215) 568-5900 ▪ Fax: (215) 568-5903

INDEPENDENT CONTRACTORS

| | | | |
|---|---|---|---|
| Cheryl Borck-Hadley | MSW | Licensed Clinical Social Worker | PA |
| Merle Edelstein | MD | Psychiatrist | PA |
| Amy E Gedrich | MSW | Licensed Clinical Social Worker | PA |
| Karen Glick | PsyD | Psychologist | PA |
| Kenneth Greiff | MSW | Licensed Clinical Social Worker | PA |

RECEIVED OCT - 1 2018 AMERICAN PROFESSIONAL AGENCY