**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL DAMIEN VARGA,** | : | **CIVIL ACTION** |
| **Individually and as Administrator of** | : | |
| **the Estate of Loren Fidalgo,** | : | **NO. 24-3410** |
|     *Plaintiff* | : | |
| | : | |
|     **v.** | : | |
| | : | |
| | : | |
| **ALLIED WORLD INSURANCE** | : | |
| **COMPANY,** *et al.* | : | |
| *Defendants* | : | |

**MEMORANDUM OPINION**

NITZA I. QUINONES ALEJANDRO                                        May 13, 2025

Before the Court is a motion to dismiss the complaint which asserts breach of contract and

bad faith claims, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and premised

on the following procedural history:

> Plaintiff Paul Damien Varga, ("Plaintiff"), individually and as the Administrator of the Estate of Loren Fidalgo, filed an insurance action in state court against Defendants Allied World Insurance company, ("AWIC"), Allied World National Assurance company ("AWNAC"), and Allied World Assurance Company (U.S.), Inc. ("AWAC U.S.") (collectively, "Allied World"), premised on an underlying wrongful death action Plaintiff had previously filed against David A. Frankel ("Dr. Frankel") and Harmony Health Services, Inc. ("Harmony") (the "Underlying Action"). Harmony had a professional liability insurance policy issued by Allied World — the Psychologists' Professional and Business Liability insurance policy (the "Policy").

> During the course of the wrongful death litigation, Allied World determined that the Policy did not provide coverage for the claims asserted by Plaintiff, disclaimed its defense and indemnity in the matter, and withdrew the attorney representing Harmony. Though given time to do so, Harmony did not obtain new counsel and a default judgment was entered against Harmony. The wrongful death matter settled. As part of the settlement agreement, Harmony assigned its insurance coverage rights against Allied World to Plaintiff.

Plaintiff, as the assignee of Harmony's rights and benefits under the Policy, filed the instant breach of contract and bad faith denial of coverage action against Allied World in state court. Allied World removed the action to this Court.

Plaintiff avers that Allied World wrongfully and in bad faith denied insurance coverage to Harmony in the Underlying Action, resulting in the $1,804,352 default judgment against Harmony. In its motion to dismiss, Allied World argues that it had no duty to defend and/or indemnify Harmony in the Underlying Action because the Policy contains an exclusion provision that precludes the coverage being sought. Allied World further contends that because there is no coverage, Plaintiff's bad faith claim fails, as a matter of law.

The issues raised by the parties in the motion to dismiss and response have been fully briefed and are ripe for disposition. For the reasons set forth herein, the motion to dismiss is granted.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in the operative complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The pertinent facts relevant to the underlying motion to dismiss and alleged in the Underlying Action[1] are further elaborated as follows:

Plaintiff filed the underlying wrongful death action in state court against Dr. Frankel and Harmony. Therein, Plaintiff averred that he is the husband of Loren Fidalgo, who was a patient at Harmony from May 2016 until her death. Ms. Fidalgo was treated at Harmony by Dr. Frankel for psychiatric medical issues. At the time, Harmony's website listed Dr. Frankel as part of its psychiatric staff.

---

[1]    As described in more detail herein, when determining whether an insurer had a duty to defend and/or indemnify its insured, a court must consider the factual allegations asserted in the underlying complaint; here, the complaint filed by Plaintiff against Dr. Frankel and Harmony (the "State Court Complaint"). *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

In the course of his treatment and before prescribing medications, Dr. Frankel ordered Ms. Fidalgo to undergo genetic testing to determine how she would respond to specific drugs and classes of medication. The genetic test results were sent to Harmony and showed that she would experience elevated side effects from atypical antipsychotic medications. From the commencement of her treatment until her death on August 15, 2017, Dr. Frankel prescribed various psychiatric medications.

Plaintiff filed a wrongful death and survivor's action asserting five counts: Count I — Medical Negligence against Dr. Frankel; Count II — Medical Negligence and Count III — Respondent Superior, both against Harmony; and Count IV — Wrongful Death and Count V — Survival Action, both against Dr. Frankel and Harmony.

In his claims against Harmony, Plaintiff alleged the following:

1.      At the time of her death, Ms. Fidalgo was taking numerous psychiatric medications including Tofranil (imipramine), Effexor (venlaflaxine), Ritalin (methylphenidate), Abilify (aripiprazole), Clozaril (clozapine), Xanax (alprazolam), Anafranil (clomipramine), and Rexulti (brexpiprazole), all of which were prescribed by Defendant Dr. Frankel and the combination of which caused Ms. Fidalgo's death. At all times material hereto, Defendant Harmony Mental Health was licensed to provide counseling and psychiatric care to patients in need of mental health treatment.

*******

48.      Harmony Mental Health undertook a duty to render medical treatment to its patients, including Ms. Fidalgo, that is within the applicable standard of care by hiring only competent mental health professionals, enacting policies and procedures to ensure that their physicians followed safe prescribing practices, and to supervise and monitor the care rendered at its facility.

49.      At all times material hereto, Harmony Mental Health held out and represented that the physicians operating out of its office were its agents and employees.

50.      Ms. Fidalgo remitted payments to Harmony Mental Health for the mental health services provided at its office by Dr. Frankel, and Harmony Mental Health in turn made corresponding payments to Dr. Frankel.

51.      Ms. Fidalgo reasonably believed that she was receiving care and treatment from Harmony Mental Health and its agents or employees.

*******

3

54.     Harmony Mental Health breached its duty to Ms. Fidalgo to hire only competent mental health professionals, enact policies and procedures to ensure that their physicians followed safe prescribing practices, and to supervise and monitor the care rendered at its facility.

55.     The failure of Harmony Mental Health to provide medical treatment within the applicable standard of care was the proximate and reasonably foreseeable cause of Ms. Fidalgo's death by mixed prescription drug intoxication.

(State Court Complaint, ECF 1-1 at pp. 1, 47-48).

**LEGAL STANDARD**

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

4

**DISCUSSION**

In his complaint, Plaintiff asserts claims for bad faith denial of coverage (Count I) and breach of contract (Count II) premised on Allied World's refusal to defend and/or indemnify Harmony in the Underlying Action. As described in greater detail below, this Court must first determine whether Allied World owed a duty to defend Harmony in the Underlying Action.

Under Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). "[T]here is no duty to indemnify if there is no duty to defend." *Id.* To determine whether Allied World owed a duty to defend Harmony in the Underlying Action, the allegations of the State Court Complaint and the language of the Policy must be examined. *See Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007).

In determining whether an insurer had a duty to defend and/or indemnify, "Pennsylvania adheres to the 'four corners' rule . . . under which an insurer's potential duty to defend is determined solely by the allegations of the complaint in the underlying action." *Ramara*, 814 F.3d at 673 (alterations and quotation marks omitted). Pursuant to the four-corners rule, a court "compar[es] the four corners of the insurance contract to the four corners of the complaint." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). After reviewing the combined eight corners, the court may determine that an insurer has a duty to defend "if the factual allegations of the [underlying] complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Id.* In making this determination, "the factual allegations of the underlying complaint . . . are to be taken as true and liberally construed in favor of the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). "To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual

allegations in the complaint, and not how the underlying plaintiff frames the request for relief." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

The mere allegation of "negligence" in a complaint is insufficient to trigger an insurer's duty to defend.  *See id.* ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead, it is necessary to look at the factual allegations contained in the complaint."); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon the *cause of action* pled, [claimants] run afoul of our case law, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend.").  The duty to defend is properly denied where the allegations fall within a clear and unambiguous exclusion of coverage.  *Harrison v. Aetna Life & Cas.*, 473 A.2d 636, 636 (Pa. Super. Ct. 1984).  If an insurer relies on exclusionary language in the insurance contract as the basis to refuse to defend a claim, the insurer bears the burden of proving this affirmative defense.  *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

Where there is no duty to defend or indemnify an insured, it follows that an insurer could not have acted in bad faith when deciding to deny coverage.  *See Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 249 F. Supp. 2d 569, 570 (E.D. Pa. 2003), *aff'd*, 107 F. App'x 266 (3d Cir. 2004) ("[A]n insurer with no duty to defend or indemnify its insured could not have acted in bad faith . . . ."); *Pro., Inc. v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 3582280, at *5 (Pa. Super. Ct. 2022) ("[I]f the bad faith claim is premised only on the denial of coverage, resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim.") (citing *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 416 (Pa. Super. Ct. 2004)).

Here, Allied World initially provided counsel for Harmony to defend against Plaintiff's claims in the Underlying Action.  Allied World later disclaimed all coverage for Plaintiff's claims

against Harmony relying on an exclusion in the Policy that precludes coverage for any claims arising out of the conduct of Dr. Frankel (the "Frankel Exclusion"). Specifically, this provision provides:

> [T]his Policy shall not cover any **Defense Expenses** or **Damages** in connection with any **Claim** or **Proceeding** against, or alleging, arising out of, based upon or attributable to any actual or alleged act, error, omission of, any of the following persons or entities . . . DAVID FRANKEL.

(Allied World Policy, ECF 9-3 at p. 6).

Allied World's reliance on the Frankel Exclusion was premised on the facts alleged in the State Court Complaint, and its determination that the claims pled fall within the exclusion. Specifically, Allied World argues that the Frankel Exclusion unambiguously precludes coverage for any claims asserted against Harmony that "arise out of" any alleged acts, errors, or omissions attributable to Dr. Frankel.

In his response, Plaintiff argues that "Dr. Frankel prescribed a dangerous cocktail of medications to Ms. Fidalgo," and concedes that "claims against Dr. Frankel are excluded from coverage under the Policy." (Pl.'s Br., ECF 13-1 at p. 11). Nevertheless, Plaintiff argues that coverage for the claim against Harmony is not precluded by the Frankel Exclusion because Plaintiff's negligence claims against Harmony are premised on Harmony's own negligent conduct which was a "but for" cause of Ms. Fidalgo's death. Plaintiff's argument is unpersuasive.

When applying Pennsylvania law, "the words 'arising out of' are 'normally given broad construction.'" *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 210 n.5 (3d Cir. 2010) (quoting *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000)). In the context of a policy exclusion, "arising out of" indicates a "but for" or "cause and result" relationship. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 110 (Pa. 1999) (quoting *McCabe v. Old*

*Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967)); *see also Alea London Ltd. v. Woodlake Mgmt.*, 365 F. App'x 427, 429 (3d Cir. 2010) ("The term 'arising out of' is interpreted in terms of 'but for' causation."); *Wolfe v. Ross*, 115 A.3d 880, 886 (Pa. Super. Ct. 2015) ("We construed the words 'arising out of' to mean the broader 'causally connected with' and not 'proximately caused by . . . .'").

For example, in *Madison Const. Co.*, an insured (Madison Construction Company) was engaged in pouring and curing concrete at a Boeing facility using a compound called Eurocure. 735 A.2d at 102. A Boeing employee was later summoned to the area where Eurocure was used to investigate a strong odor. *Id.* As the employee attempted to set up an exhaust fan for the fumes, he lost consciousness and fell, resulting in severe and permanent injuries. *Id.* The employee sued Madison Construction Company. *Id.* The insured had a commercial general liability policy that contained a policy exclusion, which provided that the insurance did not apply to "'bodily injury' . . . *arising out of* the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . ." *Id.* (emphasis added). The insured argued that the policy exclusion did not apply because the state court complaint asserted negligence claims, such as failure to warn, that did not arise out of the insured's use of Eurocure. *Id.* at 109.

Disagreeing with the insured, the Supreme Court of Pennsylvania opined that "[a]ll of the plaintiff's claims of negligence . . . rest upon the fundamental averment that 'while [the Boeing employee] attempted to set up an exhaust fan for the fumes emanating from the curing agent, he suddenly and without warning *was overcome by the fumes,* causing him to become dizzy and pass-out [sic] . . . ." *Id.* The Supreme Court of Pennsylvania concluded, based on the plaintiff's allegations, that "the plaintiff's injuries 'arose out of' the release of the irritating fumes at the

construction site," precluding coverage for those injuries pursuant to the pollution exclusion clause of the policy. *Id.* at 110.

Similarly, here, the Frankel Exclusion precludes coverage in the Underlying Action despite the Plaintiff's assertion of negligence claims against Harmony. As set forth above, the Frankel Exclusion precludes coverage for any claims "arising out of, based upon, or attributable to any actual or alleged act, error, omission of . . . David Frankel." (ECF 9-3 at p. 6). Consistent with the cases cited above, this Court finds that the language of the Frankel Exclusion, specifically the phrase "arising out of," is unambiguous. The provision excludes coverage not only for claims asserted against Dr. Frankel, but also claims *arising out of, based upon or attributable to* any act of Dr. Frankel. As noted, in the State Court Complaint, Plaintiff alleged that Dr. Frankel's prescription of the dangerous drug cocktail was the cause of Ms. Fidalgo's death. Despite Plaintiff's assertion of negligence claims against Harmony, the ultimate injury connected to these claims (the death of Ms. Fidalgo) is alleged to be caused by the "actual or alleged act, error, omission of . . . David Frankel." Specifically, in the State Court Complaint, Plaintiff alleged that:

- "For the time period of May 2016 through Ms. Fidalgo's death on August 15, 2017, Dr. Frankel concurrently prescribed numerous psychiatric drugs to Ms. Fidalgo including but not necessarily limited to Tofranil (imipramine), Effexor (venlaflaxine), Ritalin (methylphenidate), Abilify (aripiprazole), Clozaril (clozapine), Xanax (alprazolam), Anafranil (clomipramine), and Rexulti (brexpiprazole)." (ECF 1-1 at ¶ 15).

- "An autopsy revealed Ms. Fidalgo's cause of death to be mixed prescription drug intoxication." (*Id.* at ¶ 34).

- "The negligent acts of Dr. Frankel increased the risk that Ms. Fidalgo would die from mixed prescription drug intoxication and were the proximate cause of her death from mixed prescription drug intoxication." (*Id.* at ¶ 47).

- "The failure of Harmony Mental Health to provide medical treatment within the applicable standard of care was the proximate and reasonably foreseeable cause of Ms. Fidalgo's *death by mixed prescription drug intoxication*." (*Id.* at ¶ 55) (emphasis added).

As such, the negligence claims asserted against Harmony arose out of the alleged actions of Dr. Frankel. Therefore, coverage for Plaintiff's claims against Harmony are precluded by the Frankel Exclusion. Relying on the Frankel Exclusion, Allied World owed no duty to defend and/or indemnify Harmony in the Underlying Action. Consequently, because Plaintiff's bad faith claim is premised solely on the allegation that Allied World had no basis to deny coverage, the claim fails as a matter of law since this Court has determined that Allied World had no duty to defend. *See Pizzini*, 249 F. Supp. 2d at 570; *Pro., Inc.*, 2022 WL 3582280, at *5.

**CONCLUSION**

For the reasons set forth above, the motion to dismiss is granted and this matter is dismissed. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.